Filed 12/10/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CITY OF SANTA MARIA et al.,<br><br>    Cross-complainants, Cross-defendants and Respondents,<br><br>v.<br><br>RICHARD E. ADAM et al.,<br><br>    Cross-defendants, Cross-complainants and Appellants;<br><br>NIPOMO COMMUNITY SERVICES DISTRICT,<br><br>    Cross-defendant and Respondent. | H042712<br>(Santa Clara County<br>Super. Ct. No. 1-97-CV770214) |

This is the third appeal concerning the rights to groundwater contained in the Santa Maria Valley Groundwater Basin (Basin). Appellants landowner group parties (LOG) are a group of landowners, mostly farmers, who extract groundwater for agricultural use. Respondents are public water producers that pump groundwater for municipal and industrial use for their citizens and customers.[1] In the first appeal, *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266 (*City of Santa Maria*), we reversed and remanded the matter with instructions, directing the trial court to quiet title to appellants' overlying rights to native groundwater by declaring that these rights have priority over all appropriators, less the amount that respondents are entitled to pursuant to their perfected

---

[1] Respondents are the Golden State Water Company, the City of Santa Maria, and the Nipomo Community Services District.

prescriptive rights.[2]  In the second appeal, *City of Santa Maria v. Adam* (2016) 248 Cal.App.4th 504 (*City of Santa Maria II*), we affirmed the amended judgment after determining that quantification of the proportionate prescriptive loss attributable to each of the landowners' respective parcels was unnecessary and the quiet title judgment was not illusory.[3]

Before we issued our decision in *City of Santa Maria II*, appellants filed a motion with the trial court seeking to clarify that the amended judgment protects their overlying rights from future prescription.  The trial court denied appellants' motion on the merits. Appellants appeal from this ruling.  As we explain, we conclude that the issue raised is not ripe and is therefore not justiciable.  We reverse and remand with directions.

## BACKGROUND[4]

### 1.  *The First Appeal and the Amended Judgment*

The Santa Maria Valley Water District commenced the underlying case in 1997 to adjudicate the rights to the Santa Maria Valley Groundwater Basin (Basin).  (*City of Santa Maria*, *supra*, 211 Cal.App.4th at pp. 276, 281-282.)  After the Santa Maria Valley Water District commenced its initial lawsuit, appellants, who own land and extract Basin groundwater for agricultural use, filed a cross-complaint that included multiple causes of action, including a cause of action to quiet title to their overlying rights to the Basin

---

[2] The appellants in *City of Santa Maria* included the LOG parties (the appellants here) and a separate group of landowners that were identified as the Wineman parties. (*City of Santa Maria*, *supra*, 211 Cal.App.4th at p. 276.)  The Wineman parties are not a part of this current appeal.  The respondents in *City of Santa Maria* included several other parties that are not a part of this current appeal.

[3] The LOG parties were the appellants in *City of Santa Maria II*.  The respondents in *City of Santa Maria II* included the respondents in this appeal as well as the Oceano Community Services District.

[4] Our prior opinions, *City of Santa Maria*, *supra*, 211 Cal.App.4th 266, and *City of Santa Maria II*, *supra*, 248 Cal.App.4th 504, summarize the factual and procedural history of the underlying litigation and the prior appeals.  We focus on the facts relevant to the issues raised in this appeal.

2

groundwater.  (*Id*. at p. 282.)  Appellants' cross-complaint also alleged causes of action for declaratory relief with respect to the groundwater, the use of groundwater storage, ownership of groundwater storage space, return flows, and a cause of action for inverse condemnation.

The litigation over water rights, which encompassed numerous issues that are not relevant to this current appeal, was tried in several phases as described in our opinion in *City of Santa Maria*.  After a court trial, the trial court determined that the City of Santa Maria and Golden State Water Company had perfected prescriptive rights over a certain amount of water.  (*City of Santa Maria*, *supra*, 211 Cal.App.4th at p. 283.)  The trial court also determined that the quiet title remedy was unavailable because appellants had not submitted evidence from which the court could calculate the quantity of water they had pumped during the prescriptive period.  (*Id*. at p. 284.)  Thereafter, with respect to the quiet title action, judgment was entered in respondents' favor.  (*Id*. at p. 285.)  The other causes of action initiated by appellants were dismissed.  (*Ibid*.)  Appellants appealed from the trial court's judgment, in part arguing that its decision on appellants' cause of action to quiet title was erroneous.

In *City of Santa Maria*, this court reversed and remanded the matter with directions to the trial court after determining that the trial court could quiet title to appellants' overlying rights even though appellants had not submitted proof of the amount of water they had pumped.  (*City of Santa Maria*, *supra*, 211 Cal.App.4th at pp. 291-297.)  We held that a quiet title action was necessarily focused on preserving appellants' rights in the future, and "[a] declaration of [appellants'] rights will effectively prevent further erosion of their prior rights."  (*Id*. at p. 300.)  We further observed that only some of the nonstipulating landowners pleaded quiet title causes of action; thus, this court's determination that a quiet title judgment was appropriate applied only to those landowners who did.  (*Ibid*., fn. 20.)

3

On remand, the trial court amended its judgment pursuant to our directions. With respect to the quiet title cause of action, the trial court amended its judgment to state: "Subject to and limited by the adjustments for the amounts of native Basin groundwater lost to the prior prescriptive rights of the City of Santa Maria and [Golden State Water Company] as described in section 7(a), each of the LOG and Wineman Parties that filed quiet title actions has quieted title to the overlying rights to the Basin groundwater appurtenant to the properties listed as Exhibit 3, which rights are prior and paramount to any existing or future appropriative rights to the Basin groundwater. Such overlying rights shall be subject to the prescriptive rights of the City of Santa Maria and [Golden State Water Company], as otherwise provided herein. Judgment to quiet title to such overlying rights is hereby entered with respect to the real property listed as Exhibit 3, with all other LOG and Wineman party causes of action having been dismissed." (Italics omitted.)

The amended judgment also contained the following provision: "Jurisdiction, power and authority over the Stipulating Parties as between one another are governed exclusively by the Stipulation. The Court retains and reserves jurisdiction as set forth in this Paragraph over all parties herein. The [C]ourt shall make such further or supplemental orders as may be necessary or appropriate regarding interpretation and enforcement of all aspects of this Judgment, as well as clarifications or amendments to the Judgment consistent with the law." The amended judgment provided that "[a]ny party that seeks the court's exercise of reserved jurisdiction shall file a noticed motion with the court."

Appellants appealed from the amended judgment, which was the subject of our decision in *City of Santa Maria II*. On appeal, appellants argued that the amended judgment failed to quiet title because it did not quantify the proportionate prescriptive loss that could be attributed to each landowner's respective parcel. (*City of Santa Maria II*, *supra*, 248 Cal.App.4th at p. 510.)

4

2. *The Motion to Clarify the Amended Judgment*

On January 16, 2015, while the appeal from the amended judgment was pending, appellants filed a motion to clarify the amended judgment seeking to confirm that their overlying rights were protected against future prescription by appropriators, relying on *City of Los Angeles v. City of San Fernando* (1975) 14 Cal.3d 199 (*San Fernando*).

In their motion, appellants stated that in November 2014, they had filed a motion for an evidentiary hearing to determine whether the Basin was presently in a state of overdraft and whether any prescription by water purveyors was presently occurring. Appellants quoted from an opposition to appellants' motion for an evidentiary hearing that was filed by the City of Pismo Beach and a response to appellants' motion for an evidentiary hearing that was filed by the City of Arroyo Grande, City of Grover Beach, and Oceano Community Services District.[5] Appellants argued that when responding to appellants' motion for an evidentiary hearing, several parties indicated that they believed that the amended judgment did not protect appellants from postjudgment prescription. Appellants cited to a statement made by an attorney representing the Golden State Water Company during a case management conference and a joint brief submitted by the Golden State Water Company, City of Santa Maria, and Nipomo Community Services District in response to appellants' motion for an evidentiary hearing. None of the briefs or motions referenced by appellants were attached to their motion to clarify, and the briefs are not a part of the appellate record in this case.

On March 2, 2015, respondents filed an opposition to appellants' motion. Respondents argued that the issues raised by appellants' motion were not ripe because there was no actual controversy between the parties, only a disagreement about the prospective effects of the quiet title judgment. Respondents further argued that appellants cited to inapplicable law in their motion.

_____

[5] These entities are not parties to this current appeal.

3. *The Hearing on the Motion to Clarify the Amended Judgment*

On March 13, 2015, the trial court held a hearing on appellants' motion to clarify the amended judgment. During the hearing, appellants' attorney argued that there were "lawyers in the court indicating that the Basin is in overdraft," and that there had been "filings indicating that there's substantial decreases in the water levels." Appellants' attorney claimed that appellants were "entitled to clarification and/or amendment [of the judgment] to confirm that [respondents] are not prescripting against us currently."

An attorney representing the Golden State Water Company argued in part: "We have on appeal the judge's response to the appellate court's remittitur on the quiet title remedy [from *City of Santa Maria*] and how the judgment was amended. [¶] It just struck me now it would be a little odd for the [trial] court to . . . amend the judgment again on the contours of the quiet title relief that the LOG group received when that issue is on appeal. I am not sure it's appropriate to be touching with, attempting to interpret the contours of that until that appeal runs its course." The attorney further argued that he believed that appellants' appropriate course of action was to file a new quiet title cause of action.

An attorney representing the City of Santa Maria argued: "The LOG parties come before the court only with a motion to, quote, clarify. So there's no evidence before the court of an overdraft. There's no motion to amend the judgment. There's no new complaint for quiet title to be related to the existing cases. . . . [¶] . . . It's not before the court if there is such evidence . . . there are remedies available to parties in this type of situation. And this motion is not a proper remedy because it provides no remedy when they come before the court to ask for, quote, clarification. It's—it really is difficult to describe. But it does seem to us that it's asking for really an impermissible advisory opinion."

Appellants' attorney acknowledged that the trial court might be concerned about "doing another judgment," but appellants believed that the trial court did not need to

6

enter another judgment. Rather, appellants' attorney argued: "I think all that needs to happen is that [we get a] ruling . . . that [states that] the law of the case is that we're protected from further erosion, whatever that means. And we—we take it from there."

4. *The Trial Court's Order on the Motion to Clarify the Amended Judgment*

On June 17, 2015, the trial court denied appellants' motion to clarify the amended judgment on the merits. The trial court determined that *San Fernando* was narrowly decided, focused on pueblo water rights, and was distinguishable from the present case. Moreover, the trial court observed that appellants' initial action was neither injunctive nor declaratory; the only relief they requested was a quiet title action, and appellants could not go back in time and now argue that they wanted injunctive or declaratory relief. Lastly, the trial court determined that the language of the amended judgment left open the possibility that prescriptive rights could accrue in the future. Appellants appealed from the trial court's ruling, which is the subject of this current appeal.

5. *The Second Appeal*

On June 24, 2016, this court decided *City of Santa Maria II*, affirming the trial court's amended judgment in its entirety. We determined that the quiet title judgment was not an "illusory remedy." (*City of Santa Maria II*, *supra*, 248 Cal.App.4th at p. 513.) We concluded that "[t]he judgment confirms that [the appellants'] overlying rights are prior to all appropriators, except for the specified amount of prescriptive loss proved by respondents below. As we noted in the first appeal, this effectively prevents further erosion of appellants' overlying rights." (*Id*. at pp. 513-514.) We also determined that the prescriptive rights proved by the respondents in *City of Santa Maria* were fixed and quantified in the amended judgment. (*Id*. at p. 511.)

Additionally, we rejected appellants' claim that they would be unable to enforce their overlying rights without specifically quantifying the prescriptive rights that can be attributed to each landowner. (*City of Santa Maria II*, *supra*, 248 Cal.App.4th at p. 514.) We observed that "[i]n times of surplus, such as the period that the Basin is presently

7

undergoing, appellants would not be able to enjoin parties, including respondents, from appropriating water. [Citation.] It is only in times of overdraft that respondents' prescriptive rights will become pertinent. At that time, appellants would *not* be required to litigate the prescription issue again. As we have previously discussed, the amount of respondents' prescriptive rights has already been quantified. That amount will not change over time." (*Ibid*., fn. omitted.)

In a footnote, this court further stated: "This is not to say that respondents, or other appropriators, will be unable to obtain new prescriptive rights in periods of future overdraft. For example, if respondents or other appropriators continue to draw water during times of overdraft for the duration of the prescriptive period of five years, they may attain new prescriptive rights to the amount pumped. [Citation.] At that point, overlying users may seek an injunction against appropriators to prevent new prescriptive rights from forming. [Citation.] The running of the prescriptive period may also be interrupted by overlying users' self-help." (*City of Santa Maria II*, *supra*, 248 Cal.App.4th at p. 514, fn. 7.)

## DISCUSSION

On appeal, appellants argue that the trial court erred when it denied their motion requesting clarification of the amended judgment. Appellants claim that the amended judgment prevents future prescriptive rights from forming, and its motion seeking the clarifying language should not have been denied.

### 1. *Appealability*

Before we address the merits of appellants' appeal, we first address the threshold issue of appealability. (See *Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 436 [question of appealability goes to appellate court jurisdiction].) "A reviewing court has jurisdiction over a direct appeal only when there is (1) an appealable order or (2) an appealable judgment." (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696.)

8

Appellants argue that under Code of Civil Procedure section 904.1, subdivision (a)(2), an order made after an appealable judgment is appealable, and the order denying appellants' motion to clarify the amended judgment was made after the appealable amended judgment. Appellants further observe that the motion to clarify the amended judgment was made under the trial court's reserved jurisdiction to clarify the amended judgment. Thus, appellants claim that the order denying the motion to clarify is appealable.[6]

Despite the language in Code of Civil Procedure section 904.1, subdivision (a)(2), the California Supreme Court has recognized that "not every postjudgment order that follows a final appealable judgment is appealable. To be appealable, a postjudgment order must satisfy two additional requirements." (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 651.) "The first requirement . . . is that the issues raised by the appeal from the order must be different from those arising from an appeal from the judgment." (*Ibid*.) "The second requirement . . . is that 'the order must either affect the judgment or relate to it by enforcing it or staying its execution.' " (*Id*. at pp. 651-652.)

We conclude that the postjudgment order denying appellants' motion to clarify is an appealable order. (See *Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1071 [order denying motion to amend judgment to add respondent as a judgment debtor was an appealable order].) The appeal in this case raises issues different from the appeal from the amended judgment. In appellants' appeal from the amended judgment, appellants argued that the trial court's actions on remand quieting title were inadequate "because quantification of the proportionate volume of the prescriptive loss that can be attributed to appellants [was] necessary in order to successfully quiet title." (*City of Santa Maria II*, *supra*, 248 Cal.App.4th at p. 507.) The motion to clarify, on the other hand, argued that

---

[6] Respondents do not make any arguments about the appealability of the trial court's order denying appellants' motion to clarify.

9

the quiet title judgment *already* protected appellants' overlying rights from future prescription. Moreover, the trial court's order denying the motion to clarify affects the amended judgment because it relates to its scope; thus, it relates to its enforcement.

    2. *Justiciability*

        Respondents argue that the issues raised in appellants' motion to clarify are not ripe and are therefore not justiciable. Although the trial court did not expressly rule on the ripeness issue in its order denying appellants' motion to clarify, we presume that the trial court impliedly concluded that the issue was ripe for review since it rejected appellants' claims on the merits.

    a. **Overview**

        "California courts will decide only justiciable controversies." (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1573 (*Wilson*).) "The concept of justiciability is a tenet of common law jurisprudence and embodies '[t]he principle that courts will not entertain an action which is not founded on an actual controversy . . . .'" (*Ibid.*) "It is rooted in the fundamental concept that the proper role of the judiciary does not extend to the resolution of abstract differences of legal opinion." (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170 (*Pacific Legal*).) "[T]he ripeness doctrine is primarily bottomed on the recognition that judicial decisionmaking is best conducted in the context of an actual set of facts so that the issues will be framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy. On the other hand, the requirement should not prevent courts from resolving concrete disputes if the consequence of a deferred decision will be lingering uncertainty in the law, especially when there is widespread public interest in the answer to a particular legal question." (*Ibid.*)

        There are two questions that we must review to determine if an issue is ripe. First, a controversy is ripe for adjudication " 'when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be

made.' " (*Pacific Legal*, *supra*, 33 Cal.3d at p. 171.)  Second, a controversy is ripe if withholding a decision would result in hardship to the parties.  (*Id*. at pp. 172-173.)  We review an issue's ripeness de novo.  (*Wilson*, *supra*, 191 Cal.App.4th at p. 1582.)

      b.  **Application to Appellants' Motion to Clarify**

Under the first prong of the ripeness analysis, we must determine whether appellants' motion is appropriate for immediate judicial resolution, or if its abstract nature renders it difficult for us to evaluate the issues.  (*Farm Sanctuary*, *Inc*. *v*. *Department of Food & Agriculture* (1998) 63 Cal.App.4th 495, 502 (*Farm Sanctuary*).)  We conclude that appellants cannot satisfy the first prong of this analysis because a resolution of the prescription issue would require us to speculate about hypothetical scenarios where respondents or other water users attempt to prescript against appellants' overlying rights.

Here, appellants seek confirmation that the amended judgment protects them from *all* possible future prescription by respondents and other water users.  We agree with respondents that appellants' "motion to clarify" was essentially a new request for declaratory relief.  The name of a motion is not controlling (see *Powell v*. *County of Orange* (2011) 197 Cal.App.4th 1573, 1577), and a "motion" asking that the trial court confirm that the amended judgment precludes future prescriptive claims against appellants' overlying rights is, in essence, a request that the trial court declare that the amended judgment's effect is to protect appellants' overlying rights from claims of future prescription.  We are not convinced by appellants' argument that the amended judgment already protects against future prescription and their motion merely seeks to clarify their rights.  As worded, the amended judgment does not expressly reference future prescriptive rights at all; the amended judgment merely declares that appellants' overlying rights are "prior and paramount to any existing or future appropriative rights to the Basin groundwater."  (Italics omitted.)

11

In appellants' case, there is no specific factual scenario for us to review, and there is no evidence that the Basin is currently in a state of overdraft, a necessary requirement before prescriptive rights can begin to accrue. Appellants' motion to clarify the amended judgment alludes to the existence of an overdraft, but the representations made by appellants' counsel, which in turn relied on statements made by attorneys in other proceedings before the trial court, are not evidence. As our Supreme Court has stated, "[i]t is axiomatic that the unsworn statements of counsel are not evidence." (*In re Zeth S.* (2003) 31 Cal.4th 396, 414, fn. 11.) None of the quoted briefs or motions cited to by appellants in their motion to clarify were included in the record on appeal. Nor does it appear that these briefs or motions were attached to appellants' motion to clarify.

Therefore, there was no evidence from which the trial court could have reasonably concluded that the Basin was presently in a state of overdraft and a clarification of the scope of protection provided by the amended judgment was necessary. It is entirely possible that respondents will never prescript against appellants' overlying rights or will never assert a claim of prescriptive rights in the future. In the event of an overdraft or a claim of prescription, appellants may seek appropriate legal remedies at that time, such as seeking declaratory relief or an injunction.

We acknowledge that appellants brought the motion to clarify under the trial court's continuing jurisdiction as described in the amended judgment. However, any attempt to "clarify" the amended judgment—or fashion some sort of declaratory relief to address the impact of the amended judgment on all future claims of prescription—would require us to speculate about the facts surrounding an appropriator's hypothetical taking of Basin water. Discussing all of the potential scenarios that could occur would result in us rendering an impermissible advisory opinion. (See *Pacific Legal*, *supra*, 33 Cal.3d at p. 172 [facial challenge to general access policies of the Coastal Commission was not ripe to review because plaintiffs were essentially inviting court to speculate about the type of developments upon which access conditions may be imposed]; *Communities for a*

12

*Better Environment v. State Energy Resources Conservation & Development Com.* (2017) 19 Cal.App.5th 725, 735 [matter is unripe if factual context is necessary in order to resolve the parties' dispute]; but see *Security National Guaranty*, *Inc. v. California Coastal Com.* (2008) 159 Cal.App.4th 402, 418 [purely legal issue that did not rely on the facts of the case was ripe for review].)  As a result, the issue is not ripe for adjudication because the facts have not " 'sufficiently congealed to permit an intelligent and useful decision to be made.' " (*Pacific Legal*, *supra*, at p. 171.)

Likewise, appellants have not demonstrated that they would suffer hardship absent an immediate decision.  Appellants have already quieted title to their overlying rights.  Appellants will not, as they have suggested, be required to "file successive quiet title actions at least every five years" to determine if prescriptive rights are being accrued against them.  Appropriators will not be able to perfect prescriptive rights until there is an overdraft, and in times of surplus appellants may not enjoin appropriators from taking water.  (*City of Santa Maria*, *supra*, 211 Cal.App.4th at p. 291.)  Moreover, prescriptive rights cannot be obtained *unless* the adverse use is " 'open and notorious' and 'under claim of right,' which means that both the prior owner and the claimant must know that the adverse use is occurring." (*Id*. at p. 293.)  In the groundwater context, this requires evidence that the parties knew or should reasonably be deemed to have received notice that an overdraft has commenced.  (*Ibid*.)

Appellants argue that failing to clarify the amended judgment now will cause prejudice, requiring them to pursue "serial claims to protect their overlying rights from further prescriptive erosion."  We acknowledge that the California Supreme Court identified an exception to the ripeness requirement—cases that would create "lingering uncertainty in the law, especially when there is widespread public interest in the answer to a particular legal question." (*Pacific Legal*, *supra*, 33 Cal.3d at p. 170.)  Any uncertainty with respect to future accrual of prescriptive rights, however, does not satisfy this exception.

13

For example, in *Pacific Legal*, the plaintiffs sought declaratory relief on behalf of coastal property owners seeking to invalidate guidelines promulgated by the Coastal Commission that provided public access to shorelines. The plaintiffs did not challenge any individual permit; they challenged the guidelines facially on the basis that the guidelines might be enforced against them at some future time. (*Pacific Legal*, *supra*, 33 Cal.3d at pp. 162-163.) The *Pacific Legal* court affirmed the trial court's decision not to issue a declaration concerning the validity of the challenged guidelines. In its decision, the *Pacific Legal* court opined that the "[p]laintiffs are in essence inviting us to speculate as to the type of developments for which access conditions might be imposed, and then to express an opinion on the validity and proper scope of such hypothetical exactions." (*Id*. at p. 172.) *Pacific Legal* further rejected the plaintiffs' claim that they would suffer hardship absent a decision on the matter because they would not know what types of land use would be restricted under the guidelines. (*Id*. at p. 173.) *Pacific Legal* held: "The presence of the guidelines may tend to inhibit property owners from planning improvements on their land because of the possibility that they will have to comply with access conditions, should they apply for a development permit. However, the hardship inherent in further delay is not imminent or significant enough to compel an immediate resolution of the merits of plaintiffs' claims, at least under the federal standards." (*Ibid*.)

The harm suffered by appellants here is similar in severity to the harm that would be suffered by the *Pacific Legal* plaintiffs, yet the California Supreme Court did not hesitate to conclude that the *Pacific Legal* plaintiffs' claims were not justiciable. The appropriate time to test the effect of the amended judgment on future prescriptive rights is when an actual controversy arises. As we have stated, there is no evidence in the appellate record of an overdraft or any asserted claims of prescription against appellants' overlying rights. There is merely a disagreement between the parties over *how* the amended judgment should be interpreted, and "courts will not intervene merely to settle a difference of opinion." (*Farm Sanctuary*, *supra*, 63 Cal.App.4th at p. 502.)

14

In its order denying appellants' motion to clarify, the trial court determined in part that the amended judgment did not protect appellants' overlying rights against future prescription. In other words, the trial court expressed an opinion about the merits of appellants' arguments. We do not decide whether the trial court's interpretation was correct. Where, as here, "the trial court has decided a nonjusticiable controversy, the appropriate course is to reverse its judgment and to remand the matter to the trial court with directions to dismiss the action." (*Wilson*, *supra*, 191 Cal.App.4th at p. 1585.) Accordingly, we believe the appropriate remedy in this case is to reverse the trial court's order denying the motion to clarify on the merits and to direct the trial court to enter a new order denying the motion to clarify on the ground that it is a nonjusticiable controversy.[7]

## DISPOSITION

The order denying the motion to clarify the amended judgment is reversed. The trial court is directed to enter a new order denying the motion on the ground that the issue raised is not ripe.

---

[7] Since we conclude that the issue raised is not ripe for review, we do not need to address the appellants' and respondents' other claims, including their claims that *City of Santa Maria* and *City of Santa Maria II* are law of the case, and their claims about the applicability of cases like *San Fernando*, *supra*, 14 Cal.3d 199.

15

_____
Premo, J.

WE CONCUR:


_____
Greenwood, P.J.




_____
Elia, J.




City of Santa Maria et al. v. Adam et al.
H042712

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 1-97-CV770214 |
| Trial Judge: | Hon. Joseph Huber & Jack Komar |
| Counsel for Plaintiff/Appellant:<br>Landowner Group Parties | Clifford & Brown<br>Richard G. Zimmer<br><br>Law Office of E. Stewart Johnston<br>E. Stewart Johnston |
| Counsel for Defendant/Respondent:<br>Golden State Water Company | Brownstein Hyatt Farber Schreck<br>Robert J. Saperstein<br>Jena Shoaf Acos |
| Counsel for Defendant/Respondent:<br>City of Santa Maria | Best Best & Krieger<br>Eric I. Garner<br>Jeffrey V. Dunn |
| Counsel for Defendant/Respondent:<br>Nipomo Community Services District | Richards, Watson & Gershon<br>James L. Markman<br>B. Tilden Kim |

City of Santa Maria et al. v. Adam et al.
H042712